RICHARD HUFFMIRE et al., Respondents, *v.* THE CITY OF
BROOKLYN, Appellant.

1. PARTIES. The town of Flatbush, by chapter 356 of the Laws of 1894, having been merged in the city of Brooklyn, the city is a proper party defendant to any action which might have been brought against the town before the merger.

2. LIABILITY FOR DESTRUCTION OF OYSTER BED BY THE DISCHARGE OF SEWAGE THEREON. A right to plant an oyster bed under public waters within the town of Flatlands, and gather oysters therefrom, acquired under the statute (L. 1868, ch. 734), is private property and the destruction of the bed by sewage discharged thereon from a sewer of a town is a direct invasion of a private right and taking of private property within the meaning of the Constitution, although the sewer was constructed by the town under legislative authority (L. 1889, ch. 161); and the city of Brooklyn, having succeeded to the property and liabilities of the town, is liable in an action for damages for such injury.

*Huffmire* v. *City of Brooklyn*, 22 App. Div. 406, affirmed.

(Argued March 22, 1900; decided May 1, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 3, 1897, affirming a judgment in favor of plaintiffs entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John Whalen*, Corporation Counsel (*William J. Carr* of counsel) for appellant. The statute having authorized the construction of the sewer and the discharge of its contents into the tide waters, no liability could attach to the town of Flatbush without proof of fault either in the method of construction or maintenance of the sewer built under such legislative sanction. (*Radcliff* v. *Mayor, etc.*, 4 N. Y. 196; *Bellinger* v. *N. Y. C. R. R.*, 23 N. Y. 47; *Atwater* v. *Trustees*, 124 N. Y. 602; *B. Gas Co.* v. *Brunswick*, 92 Me. 493; *Booth* v. *R., W. & O. R. R. Co.*, 140 N. Y. 267; *Morton* v. *Mayor, etc.*, 140 N. Y. 207; *Hill* v. *Mayor, etc.*, 139 N. Y. 495; *Morsfield* v. *City of Worcester*, 110 Mass. 216; *W. M. Co.* v. *City of Worcester*, 116 Mass. 148.)

· *Frederick E. Crane* for respondents.   While an act of the legislature authorizing a public improvement may protect a municipality from liability for consequential · injuries, it does not protect it from liability for the direct, actual and physical taking of property. (*Carll* v. *Vil. of Northport*, 11 App. Div. 121; *Magee* v. *City of Brooklyn*, 18 App. Div. 22; *Moody* v. *Vil. of Saratoga Springs*, 17 App. Div. 207; *Byrnes* v. *City of Cohoes*, 67 N. Y. 204; *Seifert* v. *City of Brooklyn*, 101 N. Y. 136; *Noonan* v. *City of Albany*, 79 N. Y. 470; *Moore* v. *City of Albany*, 98 N. Y. 407; *N. Y. C. & H. R. R. R. Co.* v. *City of Rochester*, 127 N. Y. 591; *Hay* v. *Cohoes Co.*, 2 N. Y. 159.) The act of 1889, authorizing the town of Flatbush, through commissioners, to construct the sewer, did not authorize the taking or destruction of private property or property rights without just compensation. (*Morton* v. *Mayor, etc.*, 140 N. Y. 207; *Hill* v. *Mayor, etc.*, 139 N. Y. 495.)

WERNER, J.   This action was brought to recover damages to a bed of oysters planted by the plaintiffs in Mill creek, which is tide water bordering upon that portion of the city of Brooklyn formerly known as the town of Flatlands, Kings county, N. Y.

These oysters were planted under a permit issued to the plaintiffs by the justice of the peace and the supervisor of said town of Flatlands, pursuant to the provisions of chapter 734 of the Laws of 1868.   This act, in substance, provides that any person who has been an inhabitant of the town for a period of six months prior to making application may, upon complying with the provisions of the act, acquire the right to plant oysters under the public waters within said town, and have "*the exclusive property in the oysters so planted and the exclusive use of said oyster beds.*"   The first permit received by the plaintiffs was issued in December, 1882.   The rental or license fee was ten dollars a year.   This permit was renewed from year to year until 1892, when the plaintiffs omitted to procure a formal renewal thereof, but continued to plant and gather oysters as before.

On the 9th of February, 1893, the plaintiffs paid twenty dollars, which included the rental for 1892, and renewed their permit until December, 1893. The damage to plaintiffs' oyster bed was caused by the discharge of sewage thereon from one of defendant's sewers. The history of this sewer, and its relation to this controversy, is as follows: By chapter 161, Laws of 1889, the legislature authorized the town of Flatbush to build a sewer to empty into the waters of Jamaica bay, of which Mill creek is a part. This sewer was constructed so that its outlet was about 300 feet from plaintiffs' oyster bed, and was first used in January, 1893. Soon after it was in operation the plaintiffs discovered that their oysters were covered with and ruined by tar and "sludge acid;" substances which were being discharged from the mouth of said sewer. The town of Flatbush constructed the sewer in question; but, by chapter 356 of the Laws of 1894, said town was annexed to and became a part of the city of Brooklyn, being designated as the twenty-ninth ward thereof. Section 4 of said act provides that the city of Brooklyn shall not be or become liable to pay " *any debt, liability or obligation of the town of Flatbush * * * contracted or incurred prior to the time this act shall take effect * * * but the property in such town * * * as now constituted * * * shall remain liable for said debts, liabilities and obligations, and the moneys to meet the same, principal and interest as they accrue, shall be raised by taxation upon the property of said town.*"

The act further provides that the taxes levied for these purposes, when collected by the city of Brooklyn, shall be paid over to the county treasurer or other proper officers charged with the duty of paying such indebtedness, and exempts the territory above described from certain general city taxes.

The first question presented for our consideration, although not seriously urged upon the argument, is whether the city of Brooklyn is the proper defendant in such a case as this. As this action was not brought until after the town of Flatbush had become merged in the city of Brooklyn, the latter is

undoubtedly the proper party defendant in any case which might have been brought against the former before such merger. Where a municipal corporation is legislated out of existence, and its territory annexed to another, the latter, unless the legislature otherwise provides, is entitled to .the property and liable for the debts of the former. (Dillon on Municipal Corporations [4th ed.] section 186.) The provisions of chapter 356, Laws of 1894, limiting and defining the liability of the defendant for debts and obligations of the town of Flatbush prior to its annexation to the city of Brooklyn, were simply intended to confine the area of taxation for such debts and obligations to the territory which would have been liable but for such annexation. This is made clear by other provisions of the same act exempting the territory annexed from the payment of certain taxes levied for the exclusive benefit of the city of Brooklyn as it was constituted prior to 1874. Any other construction of the annexation act referred to would leave remediless those having lawful claims against the former town of Flatbush. That town no longer exists. By the act of 1894 it became a part of the city of Brooklyn, and the latter is now the only legal entity which can be brought into a court of justice upon claims against the former.

We, therefore, address ourselves to the principal question which arises upon defendant's contention that it is not liable in any event. It seeks to shield itself from liability herein by the application of the rule that in the construction or operation of a public work under legislative authority or direction, a municipal corporation is not answerable for such a consequential injury as may result to others where there is no negligence in such construction or operation.

We recognize the controlling force of this familiar and now well-settled principle. It is founded upon the transcendent power of the legislature, within constitutional limitations, to enact whatever it may deem essential to the public welfare. The question which most frequently arises in cases where this rule is invoked, is whether the injury complained of is purely consequential, or is so direct as to amount to a taking of prop-

erty which entitles the party injured to compensation under the Constitution. That is the precise question here presented. The plaintiffs contend that the casting of noxious and destructive substances upon their oyster bed was not a consequential but a direct injury. The defendant insists that the discharge of the sewer in question into the waters of Mill creek is simply the consequential result of obedience to the legislative mandate; and that in the absence of negligence on the part of the municipal authorities in the construction and operation of said sewer, the defendant is not liable. Applying the rule which the defendant invokes in all its force and breadth, we think this case falls directly within the constitutional inhibition against the taking of property without compensation. The plaintiffs were lawfully in possession of a piece of land under water upon which they had planted a bed of oysters. They held their title under legislative authority, which was as ample and unquestioned as that under which defendant's sewer was constructed. Although this land was under public waters it was as much the private property of the plaintiffs as though it had been a tract of farm land held under a lease from the town of Flatlands under legislative authority. The act of the defendant in pouring its sewage upon this land was not consequential. It was as direct as though it had been discharged upon a piece of land owned or rented by the plaintiffs and used for farming or gardening purposes. In the latter case a municipal corporation could not successfully defend its trespass because it was acting under legislative authority; or because its sewage had been carried to the lands of the person complaining over the lands of others. The fact that plaintiffs' land was under public water, and that defendant's sewage was discharged upon it, after passing through three hundred feet of public water, the land under which was not in the possession or control of the plaintiffs, does not differentiate this case in principle from the illustrative case of a discharge of sewage upon surface lands. In either case the injury is so direct as to amount to an invasion of a private right, which no legislative sanction or direction can justify or

excuse. These views are, we think, sustained by abundant authority. Early in the history of this court the distinction was clearly pointed out between direct and consequential injury to private lands in the prosecution of public work performed under legislative direction. The case of *Radcliff's Executors* v. *Mayor, etc., of Brooklyn* (4 N. Y. 205) was one in which the plaintiffs were held not entitled to recover for injuries to their lands occasioned by a change of grade in the street adjoining the same. None of their lands had been taken or invaded. In speaking of the rule applicable to such cases, Judge BRONSON said : " Private property cannot be taken for public use without making just compensation to the owner ; and a law which authorizes the taking without providing for compensation, must be unconstitutional and void. But laws which authorize the opening and improving of streets and highways, or the construction of other works of a public nature, have never been held void because they omitted to provide compensation for those who, *though their property was not taken*, suffered indirect or consequential damages." In *Bellinger* v. *New York Central Railroad* (23 N. Y. 47) the defendant, under legislative authority, constructed a railroad embankment in such a manner as to cause a stream to overflow the lands of the plaintiff. Judge DENIO, in discussing the right of the railroad company to do the act complained of, said : " This is, of course, to be understood as limited to cases in which the legislature has the constitutional power to act. If, therefore, a corporation or an officer should be authorized by a statute to take the property of individuals for any purpose, however public or generally beneficial, without compensation, or, for a private use, making compensation, the pretended authority would be wholly void, and, of course, could afford no protection to any one. *But this limitation has no application to cases where property is not taken, but only subjected to damages consequential upon some act done by the state or pursuant to its authority.*"

In *Atwater* v. *Trustees of the Village of Canandaigua* (124 N. Y. 602), cited by defendant, and arising out

of a state of facts similar to those in the *Bellinger Case* (*supra*) the distinction above adverted to was again recognized by this court in the following language: " In the present case the action of the defendants in the performance of the work was confined within the limits where they had the right to execute it, and the effect upon property beyond those bounds resulting in damages was the consequence of such performance of the work, and not the direct act of its execution by them. In that respect this case is distinguishable from that of *St. Peter* v. *Denison* (58 N. Y. 416). *There the defendant was held liable because, by casting stone upon the premises, he committed a trespass ; and the fact that he was engaged in the performance of a public work and the fragment of rock was in the process of blasting thrown upon the land of another, was no justification.* Here the injury to the plaintiffs' premises was not done directly by any act of the defendants, but it was the consequence following and traceable to the work as the cause. *In the one case the act of the party was, and in the other not, a direct invasion of the premises of the plaintiff.*"

But even more directly in point are *Noonan* v. *City of Albany* (79 N. Y. 476) and *N. Y. C. & H. R. R. R. Co.* v. *City of Rochester* (127 N. Y. 591). In the first of these cases it was held : " A municipal corporation has no greater right than an individual to collect the surface water from its lands or streets into an artificial channel, and discharge it upon the lands of another, nor has it any immunity from legal responsibility for creating or maintaining nuisances." In the other case it was decided that " a municipality may not empty its sewers upon private property, without acquiring the right so to do." The same doctrine was held to apply in *Seifert* v. *City of Brooklyn* (101 N. Y. 143), which was an action brought to recover damages alleged to have been caused to plaintiff's premises by defendant's negligence in the construction of a sewer. There Chief Judge RUGER stated the rule, which is applicable here, as follows: " It is a principle of the fundamental law of the state that the property of individuals

cannot be taken for public use except upon the condition that just compensation be made therefor, *and any statute confer-ring power upon a municipal body, the exercise of which results in the appropriation, destruction or physical injury of private property by such body, is inoperative and inef-fectual to protect it from liability for the resultant damages, unless some adequate provision is contained in the statute, for making such compensation.* \* \* \* *Where* \* \* \* *the acts done are of such a nature as to constitute a positive invasion of the individual rights guaranteed by the Consti-tution, legislative sanction is ineffectual as a protection to the persons or corporation performing such acts from responsi-bility for their consequences.*"

The foregoing authorities sufficiently illustrate the under-lying principle which must control the decision of this case. Briefly recapitulated, it is that when in the exercise of author-ity conferred upon them by the legislature, municipal corpo-rations perform acts as a result of which some indirect or con-sequential injury is sustained by an individual, the latter has no right of action for such injury. Such injuries are *damnum absque injuria. But when a municipal corporation takes the property of an individual it must pay for it.*

We have not lost sight of defendant's contention that the deposit of sewage on the plaintiffs' land was not a taking of their property. We are of the opinion that any direct invasion of a man's land is a taking of his property within the meaning of the Constitution. The destruction of plaintiffs' oysters by the casting of sewage upon them was as clearly a taking of their property as the physical removal and conversion of the same would have been.

The judgment of the court below should be affirmed, with costs.

PARKER, Ch. J., GRAY, BARTLETT, MARTIN and VANN, JJ., concur; CULLEN, J., not sitting.

Judgment affirmed.