J. HENRY HENTZ, Respondent, *v.* THE CITY OF MOUNT VERNON, Appellant.

*Nuisance — city collecting and discharging surface water into a stream which overflows its banks — liability to riparian owners.*

A city which collects the surface drainage of a watershed and discharges it into a natural stream, thereby overtaxing the capacity of the stream and causing it to overflow its banks and flood the land through which it passes, is liable to the owner of such land for the damages sustained by him.

APPEAL by the defendant, The City of Mount Vernon, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 6th day of March, 1902, upon the report of a referee.

*William J. Marshall* and *J. Mortimer Bell,* for the appellant.

*Odell D. Tompkins* [*George C. Appell* with him on the brief], for the respondent.

WOODWARD, J. :

The owner of certain premises located in the city of New York, immediately adjacent to the city of Mount Vernon, brings this action against the city of Mount Vernon for damages alleged to have been sustained by the plaintiff by reason of the creation or maintenance by the latter of a nuisance, whereby plaintiff was specially damaged. The parties to the action have stipulated that the system of drainage constructed and maintained by the city of Mount Vernon, complained of in the complaint, was, is and is intended to be a permanent structure and the defendant intends to maintain the same permanently as the same is now in operation, and that if the defendant is liable for any damages in this action for creating or maintaining a nuisance, the plaintiff shall be allowed to prove and recover as his damages for such nuisance the difference in the market value of his property, with or without such nuisance, which may have been or be caused by the acts of the defendant, complained of in this action; and that the plaintiff shall not bring any further action, at law or in equity, to recover damages from the defendant for any acts of the latter in the event of his recovering herein the difference in the market value of his property with and without the aforesaid nuisance. It was also stipulated upon the trial that the referee might visit the property involved in the controversy and view the same, and that his view might be taken in consideration by him in determining this case, "not only his view as to these obstructions, but his view as to the lay of the land; his view as to what is swamp land and what is not swamp land — in other words, that his inspection should be used by him with the same force and effect as if he were a commissioner to determine the value of real estate or the damage done to real estate in condemnation proceedings."

While the defendant urges, on the authority of *Claflin* v. *Meyer* (75 N. Y. 260, 267), that the facts appearing to the referee upon such view should appear in the record, we are of opinion that under this stipulation, in the absence of evidence that the referee proceeded upon an erroneous theory of the law, there is no question of the amount of the damages to be reviewed upon this appeal. The evidence on behalf of the defendant shows that the property was worth at least $100,000, while that of the plaintiff places the figure

at double this amount; so that the nuisance being established and the damages being for the future, as well as for the past, it cannot be said as a matter of law that the judgment in this action is excessive.

The plaintiff is the owner of certain real estate described in the complaint, located in the city of New York, upon the boundary of that municipality and the city of Mount Vernon. Prior to the year 1892, from time immemorial, a natural stream of pure, wholesome water, starting in the vicinity of Twelfth avenue and Second street in the city of Mount Vernon, flowed southwesterly through the block bounded by Twelfth and Thirteenth avenues and Second and Third streets, and across Thirteenth avenue, at a point distant about 150 feet northerly from Third street, then flowed in a southerly direction across Third street to the southerly boundary line of the city of Mount Vernon, and then through plaintiff's land. This was a small brook, the bed of it being about one and one-half feet deep, and three feet wide at the top and two feet wide at the bottom. In 1892 the then village of Mount Vernon caused a sewer to be constructed through Thirteenth avenue, between Second and Third streets. In the construction of this sewer, and in changing the grade of Third avenue, the village obstructed said natural stream by running it, or attempting to run it, through an inadequate culvert under Thirteenth avenue. This caused the water to back up and flood adjoining property in times of rains and freshets. This condition continued until after 1895, when the city entered into a contract for the construction of drains to carry off the surface water with Cortright & Kenlon. It appears from the evidence that owing to the errors in the engineering plans the difficulties with the sewer system continued, and that an effort was made to induce the plaintiff in this action to permit the defendant to enter upon his premises for the purpose of making repairs or alterations in the system. This being denied, the city called upon its board of health to force the construction of an outlet through the premises of the plaintiff. This was done, the defendant in the meantime having caused the natural stream to be filled up its entire distance through the city of Mount Vernon. In place of the natural stream a twenty-four-inch sewer pipe was laid, connecting the surface drainage of the entire watershed by means of catch basins and lateral drains, so that

it appears from the evidence that fifty per cent of the rainfall of the said watershed was precipitated into this main sewer pipe within thirty minutes of the time that it fell. The plaintiff, about the time that the defendant filled up the natural stream within the city of Mount Vernon, caused the stream passing through his premises to be covered over a portion of the distance and made adequate preparation for taking care of the natural flow of the stream. His contention in this action is that the waters, by reason of the accelerated flow due to this system of surface drains, have carried down into this natural stream the filth and pollution of the city, and the capacity of the stream being overtaxed, the surface water, with its collection of garbage and refuse from the streets, has overflowed its bounds and distributed the same over his property, causing noxious odors and creating a nuisance by which he is especially damaged. The learned referee before whom the case was tried has found upon sufficient evidence that the contention of the plaintiff is true and has fixed his damages at $30,000. From the judgment entered the defendant appeals to this court.

After a careful examination of the long line of authorities called to our attention by the learned counsel for the defendant, we are unable to distinguish this case in principle from that of *Noonan* v. *City of Albany* (79 N. Y. 470) and the many cases which have followed its doctrine, down to and including *Huffmire* v. *City of Brooklyn* (162 N. Y. 584, 590), where the leading case is cited. In *Carll* v. *Village of Northport* (11 App. Div. 120, 121) the court say : " It is the undoubted right of a municipal corporation to grade its streets or change the grade when it deems it necessary so to do, and property owners have no ground of complaint even though the consequence be that surface water is thrown upon the land, or caused to flow thereon in larger quantity than formerly, or is prevented from flowing therefrom and is collected thereon. But no right exists to collect a material body of water by diverting it from its natural flow or by other means to gather it together, and when thus collected to conduct it by any artificial channel and discharge it in a body upon private property." The defendant seeks to distinguish the line of cases, of which this is one, upon the theory that the defendant had not diverted the water from its natural flow, but has merely collected the drainage of the watershed and conducted it

into the channel of the natural stream.   While in some of the cases
there is a suggestion that the drainage area has been enlarged and
additional water carried into the natural channel, this, it seems
to us, is an impractical and immaterial. distinction.   The gravamen
of the action is the collecting and precipitating of the waters of
a municipality into a stream which is inadequate for the purposes of
drainage.   The stream, which in its natural state would be capable of
carrying off the waters of a watershed, where only about twenty per
cent of the rainfall would reach the stream within thirty minutes,
may become entirely inadequate when, as shown by the evidence,
fifty per cent of the water reaches the bed of the stream within the
same period, under the drainage system adopted by the defendant.
It is the act of the defendant in overtaxing by artificial means the
natural waterway, overflowing the plaintiff's grounds and causing
him special damage, which constitutes the cause of action.   It
clearly appearing that the defendant is responsible for this condition
of affairs, brought about by its own disregard of the engineering
problems presented, there is no reason in law or equity why the
damages plaintiff has sustained and will sustain shall not be com-
pensated.   It is clearly the principle recognized and adopted in the
case of *Noonan* v. *City of Albany* (*supra*), as well as in *McCarthy*
v. *Village of Far Rockaway* (3 App. Div. 379, 381); *Carll* v. *Vil-
lage of Northport* (11 id. 120, 122, and authorities there cited);
*Huffmire* v. *City of Brooklyn* (22 id. 406, 411, and authorities
there cited; S. C., 162 N. Y. 584, 590, and authorities there cited).
(See, also *Spink* v. *Corning*, 61 App. Div. 84; affd., without opin-
ion, 172 N. Y. 626.)

The defendant relies upon *Anchor Brewing Co.* v. *Dobbs Ferry*
(84 Hun, 274), and while some of the expressions used by the court
may seem to support the contention of the defendant, we are unable
to hold that it is controlling in this case.   The changes which were
under consideration in that case related to alterations in the grade
of the streets, and it was not shown that the municipality had con-
structed or operated any drains in the territory, except such as were
purely incidental to the changes of grade and improvement of the
streets.   In other words, the rainfall of the watershed was not con-
centrated in artificial channels and precipitated upon private prop-
erty; the only change made was that incident to the improvement

of the highways, which was quite a different case from that presented in the matter now before us.

There seems to be no reason for the contention of the defendant that the board of health of the city of Mount Vernon, as an independent governmental agency, was responsible for this condition of affairs upon the premises of the plaintiff. The city of Mount Vernon was clearly the moving party in the work done upon the premises of the plaintiff, and in thus maintaining the system of drainage by which the plaintiff suffers damage it cannot escape the responsibility in this way.

The judgment appealed from should be affirmed, with costs.

GOODRICH, P. J., BARTLETT and HIRSCHBERG, JJ., concurred.

Judgment affirmed, with costs.