Squaw Island Freight Terminal Company, Inc., Respondent, *v.* City of Buffalo, Appellant.

Argued September 28, 1936; decided March 9, 1937.

*Gregory U. Harmon, Corporation Counsel (Frank C. Westphal* of counsel), for appellant. The judgment entered by the Appellate Division is not sustained by evidence at the trial. (*Walrath* v. *Hanover Fire Ins. Co.,* 216 N. Y. 220; *Graser* v. *Stellwagen,* 25 N. Y. 315; *Allen* v. *Patterson,* 7 N. Y. 476; *Blair* v. *Bartlett,* 75 N. Y. 150; *Shaw's Jewelry Shop, Inc.,* v. *New York Herald Co.,* 170 App. Div. 504; 224 N. Y. 731; *Gilman* v. *City of Philadelphia,* 70 U. S. 713; *Rutz* v. *St. Louis,* 10 Fed. Rep. 338; *Escanaba Co.* v. *Chicago,* 107 U. S. 678; *Cummings* v. *Chicago,* 188 U. S. 410; *Rocky Point Oyster Co.* v. *Standard Oil Co.,* 265 Fed. Rep. 379; *Pound* v. *Turck,* 95 U. S. 459.) The plaintiff's right to recover is barred by its own acts or those of its licensee. (*Bowman* v. *Humphrey,* 132 Iowa, 234; *Leeds* v. *N. Y. Tel. Co.,* 178 N. Y. 118; *McKay* v. *Syracuse R. T. Ry. Co.,* 208 N. Y. 359.) Chapter 341 of the Laws of 1882 constitutes a complete defense to the action. (*Sayre* v. *Newark,* 60 N. J. Eq. 361; *Commonwealth ex rel. Attorney-General* v. *City of Newport News,* 164 S. E. Rep. 689; *City of Richmond* v. *Test,* 48 N. E. Rep. 610; *City of Valpariso* v. *Hagen,* 54 N. E. Rep. 1062; *Strawberry Island Co.* v. *Cowles,* 79 Misc. Rep. 279; *Illinois Central R. R. Co.* v. *Illinois,* 146

U. S. 387; *City of Cleveland* v. *Standard Bag Co.*, 72 Ohio St. 324.) The action of the United States government in respect to the modification and withdrawal of dredging permits in and about Squaw Island bars the granting of an injunction against the defendant, and also bars a recovery of damages. (*McMorran Milling Co.* v. *Little Co.*, 201 Mich. 301; *United States* v. *Gleason Coal Co.*, 14 Fed. Rep. [2d] 233; *Archer* v. *Greenville Sand & Gravel Co.*, 233 U. S. 60; *Appleby* v. *City of New York*, 271 U. S. 364; *People ex rel. Lehigh V. Ry. Co.* v. *State Tax Comm.*, 247 N. Y. 9; *Wear* v. *Kansas*, 245 U. S. 154; *Strawberry Island Co.* v. *Cowles*, 79 Misc. Rep. 279.) The Appellate Division erred as a matter of law in granting the judgment which it did. (*McCann* v. *Chasm Power Co.*, 211 N. Y. 306; *Knoth* v. *Manhattan Ry. Co.*, 187 N. Y. 243.)

*James A. Deckop, Adrian Block* and *John F. Huber, Jr.*, for respondent. The plaintiff has a common law right to have the waters of Niagara river flow by its premises in a state of natural purity, subject to a reasonable use thereof by upper riparian owners, and this right is property which cannot be taken for a public use, other than navigation, without due compensation. (*Sweet* v. *City of Syracuse*, 129 N. Y. 316; *Smith* v. *City of Rochester*, 92 N. Y. 463; *Kingman* v. *Sparrow*, 12 Barb. 201; *Matter of Commissioners of State Reservation*, 37 Hun, 537; *Jones* v. *Llanrwst Urban District Council*, [1911] 1 Ch. 393; *Lyon* v. *Wardens of Fishmongers*, [1876] 1 App. Cas. 662; *Matter of City of New York*, 168 N. Y. 134; *Western New York Water Co.* v. *City of Niagara Falls*, 91 Misc. Rep. 73; 176 App. Div. 944; 226 N. Y. 671; *Strobel* v. *Kerr Salt Co.*, 164 N. Y. 303; *City of New York* v. *Blum*, 208 N. Y. 237; *Butler* v. *Village of White Plains*, 59 App. Div. 30; *Mann* v. *Willey*, 51 App. Div. 169; 168 N. Y. 664; *Huffmire* v. *City of Brooklyn*, 162 N. Y. 584; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 79; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75; *Hedges* v. *West Shore R. R. Co.*, 150 N. Y. 150; *Thousand Island*

*Steamboat Co.* v. *Visger*, 179 N. Y. 206; *Town of Brookhaven* v. *Smith*, 188 N. Y. 74.) Even though plaintiff's damages were consequential, it is entitled to redress. (*Huffmire* v. *Brooklyn*, 162 N. Y. 584; *Sammons* v. *City of Gloversville*, 175 N. Y. 346; *Western N. Y. Water Co.* v. *City of Niagara Falls*, 91 Misc. Rep. 73; 176 App. Div. 944; 226 N. Y. 671; *Hill* v. *Mayor*, 139 N. Y. 495; *Morton* v. *Mayor*, 140 N. Y. 207; *Bohan* v. *Port Jervis Gas Light Co.*, 122 N. Y. 18.) The plaintiff is entitled to an injunction restraining the defendant from discharging sewage upon and adjacent to its lands, and from polluting the waters flowing over, along and adjacent to its lands. (*Fonda* v. *Village of Sharon Springs*, 70 Misc. Rep. 101; *Lawatsch* v. *City of Kingston*, 68 Misc. Rep. 236; *Adams* v. *Popham*, 76 N. Y. 410; *Chapman* v. *City of Rochester*, 110 N. Y. 273; *Huffmire* v. *City of Brooklyn*, 162 N. Y. 584; *Snow* v. *Williams*, 16 Hun, 468; *Bolton* v. *Village of New Rochelle*, 84 Hun, 281; *Sammons* v. *City of Gloversville*, 175 N. Y. 346; *Butler* v. *Village of White Plains*, 59 App. Div. 30; *Moody* v. *Village of Saratoga Springs*, 17 App. Div. 207; 163 N. Y. 581.) Plaintiff is entitled to recover damages for loss of rental value of its lands and the value of the destroyed sand and gravel deposits. (*Whitbeck* v. *N. Y. C. R. R. Co.*, 36 Barb. 644; *Rock* v. *Belman Contracting Co.*, 141 Misc. Rep. 242; *Argotsinger* v. *Vines*, 82 N. Y. 308; *Carpenter* v. *City of Buffalo*, 137 Misc. Rep. 618; 232 App. Div. 868; *Michel* v. *Supervisors of Monroe Co.*, 39 Hun, 47; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 136 N. Y. 543; *Doyle* v. *M. R. Co.*, 128 N. Y. 488; *Roberts* v. *N. Y. E. R. R. Co.*, 128 N. Y. 455; *Reisert* v. *City of New York*, 174 N. Y. 196.) Whether plaintiff now has or ever had a permit to excavate sand and gravel has no bearing on the action. (*Archer* v. *Greenville Sand & Gravel Co.*, 233 U. S. 60; *Waterford E. L. H. & P. Co.* v. *State*, 208 App. Div. 273; 239 N. Y. 629; *Miller* v. *Mayor*, 109 U. S. 385; *Converse* v. *Portsmouth Cotton Oil Refining*

*Corp.*, 260 U. S. 724; *Huffmire* v. *City of Brooklyn*, 22 App. Div. 406; 162 N. Y. 584.)

FINCH, J. This action is brought by the plaintiff, as part owner of Squaw Island, for an injunction restraining the city of Buffalo from committing a permanent, continuing trespass upon, and interfering with, the rights of the plaintiff arising from emptying its sewage into the Niagara river and for damages. Plaintiff further alleges that unless the plaintiff obtains relief by restraining such trespass, nuisance, and illegal and wrongful acts on the part of the defendant, the plaintiff will be compelled to bring its actions from day to day against the defendant to recover its damages. Thus a bill of complaint is stated praying equitable relief on the ground of multiplicity of suits.

The Niagara river is a navigable fresh water stream which forms part of the international boundary line between the United States and Canada. It bounds the city of Buffalo on the west. Close to the east bank of the river and within the city limits is Squaw Island, the major portion of which was purchased by the plaintiff in 1916. In 1926 the plaintiff purchased from the State thirty acres of land under water. The plaintiff, through a licensee, has been engaged in dredging sand and gravel from the island. The dredging is done in the water along the shore of the island and this causes the upland close to the dredged areas to fall into the water. As a result the river has gradually widened, covering many acres of the plaintiff's land. This dredging by the plaintiff's licensee created or enlarged a " bay " along the shore of the island.

In 1882 the State Legislature authorized the city of Buffalo to construct a sewer running into the Niagara river. This sewer was constructed and is known as the Swan street sewer. It removes the sewage from almost half of the city of Buffalo. Adjacent to the sewer is a city pier known as the Bird Island pier. In the course of

years the outlet of the sewer has been moved slightly and extensions have been built which, for the purposes of this appeal, it is unnecessary to describe in detail. In 1917 a new concrete wall or pier was constructed by the city close to the Bird Island pier and from time to time this wall has been extended.

Prior to 1925 the sewage emitted through the Swan street sewer does not seem to have affected the property of the plaintiff to any appreciable extent, but in that year it began to settle upon the sand and gravel which was being dredged. From then till 1927 these deposits became more and more polluted by sewage and since 1927 they have been so badly polluted that it is claimed that they are useless for commercial purposes.

Subsequent to 1922 the dredging had been done under Federal licenses. The last license of the plaintiff ran to 1929 and was never renewed. Another license of the plaintiff for a portion of the island seems to have been revoked in May, 1927, but the plaintiff had stopped dredging in May, 1927, before the revocation of this license and long before the expiration of the other license.

At the trial there was dispute and conflicting testimony on the question whether the pollution of the sand and gravel in 1925, after many years during which the discharge of the sewage had not polluted the plaintiff's land, was the result of the erection of the new stone wall and its extensions and the changes in the sewer outlet by the city, or whether it was the result of the creation or extension of the bay by the plaintiff's dredging. The trial court found that the bay acted as a settling basin drawing the sewage and other matter upon the sand and gravel under the waters of the bay and that but for the contributing acts of the plaintiff in excavating the sand and gravel, and thereby forming the bay in question, the sewage would have passed down the river without damage.

The trial court in its opinion stated that the Niagara river, being a navigable stream and an international

boundary, and title in the bed of the stream being in the State, is subject to the same rule as tidal waters and that, therefore, riparian owners are not entitled to have the water flow by their property in its natural unpolluted state and that municipalities may sewer into it. It found that the State had granted the city of Buffalo the right to sewer into the river and that the city had acted in compliance with this grant. It also found that the pollution was the result of the plaintiff's own acts. The trial court further found that at all times since the construction of the sewer down to the present time the said Swan street sewer has continually discharged and now discharges into the Niagara river upstream from Squaw Island great quantities of domestic, raw, untreated sewage, offal, trade waste, street sweepings, filth and other matter all coming from the city of Buffalo through the various branches of the districts served by said Swan street trunk sewer and that the average dry weather flow and discharge of the Swan street sewer is and has been at the rate of 90 cubic feet per second. Moreover the court found that the first traces of sewage and filth appeared on the land of the plaintiff in the summer of 1925 and that thereafter said sewage and pollution continued to increase until May, 1927, when the destruction of all sand and gravel deposits on said land became complete.

The order and judgment of the Appellate Division recited a reversal on the law and facts. Since only four insignificant findings of fact were reversed, this statement in the order and judgment must be applied in light of what the reversal actually accomplishes. In addition to the reversal of the four findings of fact, the conclusions of law are reversed, but no new findings are made. The reversed findings of fact are either of minor importance or, in substance, conclusions of law. Thus we find that in effect the reversal left intact the findings of fact of Special Term but, instead of exonerating the defendant, as a matter of law it imposed liability upon the city on the

ground that it lacked the right to discharge sewage in such manner as to pollute the sand and gravel of the plaintiff. The Appellate Division further ordered that the action be remitted for the ascertainment of damages and for the issuance of an injunction but that the injunction be withheld till Special Term determined means adequate to avoid the pollution and a reasonable time to put such means into effect, and that the effective date of the injunction should be fixed accordingly and upon such further terms and conditions as in the discretion of the trial court will best preserve the legal rights of the parties. In its opinion accompanying the order, the Appellate Division stated that it did not determine the question of weight of evidence, but assumed that there was proof sufficient to support the findings of the trial court.

The Appellate Division has certified questions to this court.

The appeal is on certified questions from an interlocutory judgment, and, therefore, even though there are reversed findings of fact, this court cannot consider the weight of evidence. We must accept as true the facts found by the Special Term in so far as they have support in the evidence. Special Term has found that sewage from the city sewer has polluted the sand and gravel of the plaintiff, but that the plaintiff brought this upon itself by excavating its sand and gravel and thereby creating the bay, which acts as a settling basin.

The general rule is that a riparian owner in a non-navigable fresh water stream is entitled to have the water that passes his land free from pollution. Such riparian owners, therefore, are entitled to an injunction against a city which pollutes the water of such a stream. (*Sammons* v. *City of Gloversville*, 175 N. Y. 346.) As to tidal waters the rule is that riparian owners are not entitled to have such waters free from pollution. (*Seaman* v. *City of New York*, 176 App. Div. 608; affd., 227 N. Y. 572;

*Darling* v. *City of Newport News*, 249 U. S. 540.) The underlying basis for this exception as to tidal waters is that the State is the absolute owner of the bed of the stream and may grant rights therein of benefit to the public, subject only to the right of the public to use the waters for purposes of navigation. (9 R. C. L., p. 682.) The State, however, has title to the bed of the Niagara river (*Matter of Commissioners of State Reservation*, 37 Hun, 537), and it is a navigable stream. The questions of how far the city of Buffalo, if duly authorized by the State, may pollute the waters of the Niagara river, and whether the tidal waters rule is applicable to that river, are not before us for the following reason.

The rule permitting the pollution even of tidal waters has been always subject to the limitation that in the absence of express sanction the pollution must not result in a direct trespass or nuisance to the property of riparian owners. (*Bolton* v. *Village of New Rochelle*, 84 Hun, 281; cases in 15 British Ruling Cases, p. 1027; 9 R. C. L., p. 683; 84 Am. St. Rep., p. 922. See *Huffmire* v. *City of Brooklyn*, 162 N. Y. 584.) Certainly a municipality cannot escape liability for the pollution of waters which results in a continuing direct trespass and nuisance to riparian owners, unless the State has sanctioned such nuisance or trespass. (1 Farnham on The Law of Waters and Water Rights, § 138b.) No such permission or sanction is to be found in the case at bar. The statute merely authorizes the construction of the sewer with an outlet in the· Niagara river. (Laws of 1882, ch. 341.) This does no more than grant permission to discharge sewage into the river. It does not expressly confer authority to create a nuisance or commit a trespass. The rule is that legislative authority, which will justify an injury to private property and afford immunity for acts which otherwise would be a nuisance, must be express, and it applies in full vigor to statutes authorizing municipalities to discharge sewage into rivers. (*Sammons* v. *City of Glovers-*

*ville,* 175 N. Y. 346; British Ruling Cases, p. 1035 *et seq.;* Montgomery & Phelps, Stream Pollution, p. 124 *et seq.*) Whether legislation authorizing pollution which creates a nuisance would be constitutional, it is unnecessary for us to decide at this time.

The point is made that the defendant is not guilty of creating a nuisance, or at least is not responsible for the nuisance, since Special Term has found that the dredging by the plaintiff resulted in the formation of the bay, which contributed to the nuisance. The plaintiff, however, was doing what it had a perfect right to do. We cannot hold that the plaintiff cannot recover for the nuisance on the ground that, if it did not use its land in the manner in which it had a right to use it, there would be no nuisance. Thus, one who owns or purchases a plot of unimproved land may construct a dwelling house upon it and then complain that noxious gases emitted from a neighboring factory constitute a nuisance. Of course, the owner of the dwelling house brought the damage upon himself by building upon his land adjacent to the factory. But, although there may have been no one in a position to complain prior to the erection of the house of the plaintiff, the plaintiff had the right to build, and the owner of the factory did not have the absolute right to persist in emitting fumes which had become a nuisance. Similarly, the city of Buffalo, which has the right to discharge the sewage into the river, may not persist in doing so in a manner which results in a continuing trespass upon, or a nuisance to the land of the plaintiff while the plaintiff is using the land in a manner in which it has a right so to do.

*Leeds* v. *New York Telephone Co.* (178 N. Y. 118), relied upon by the defendant, is not at all in point. That was a personal injury action, in which it was held that negligence of the defendant, if the defendant was negligent at all, was not the proximate cause of the injury, but merely a remote cause, the proximate cause being the

negligence of another. Nor does *Bowman* v. *Humphrey* (132 Iowa, 234) aid the defendant. That case held that the doctrine of contributory negligence was not applicable to an action to recover for a nuisance, but that the erroneous charge on the point had not prejudiced the plaintiff since he had been awarded damages. The opinion contains dicta to the effect that the plaintiff cannot recover for damages occasioned by his own neglect or wrongdoing, but in the case at bar it has not been found that the plaintiff was guilty of neglect or wrongdoing.

The city also argues that the plaintiff is barred from recovering damages because its Federal licenses have been revoked or have expired. The plaintiff, however, has not made application for new licenses. Such licenses might be granted or refused upon present application, but even if refused now, they might be granted in the future. The lack of licenses, therefore, cannot bar the plaintiff from recovering damages, but may be considered in mitigation of damages and even perhaps to the entire elimination thereof.

We conclude, therefore, that the first certified question should be answered in the affirmative, and the second, third, and fourth questions should be answered in the negative.

It is unnecessary to answer the fifth and sixth certified questions except as follows. In view of the fact that an essential municipal activity is involved, and, since the plaintiff, lacking the necessary license, cannot dredge at present, the Special Term, in carrying out the judgment of the Appellate Division, in the event that the city is unable to find means adequate to avoid the pollution, should find the amount of permanent damages, if any, to the plaintiff and withhold the injunction unless the defendant fails to pay or tender to the plaintiff the amount so found within a reasonable time to be fixed by Special Term. (*Ferguson* v. *Village of Hamburg*, 272 N. Y. 234.)

The order and interlocutory judgment of the Appellate

Division should be modified in accordance with this opinion and as so modified affirmed, without costs. The questions certified should be answered as indicated herein.

CRANE, Ch. J. (dissenting). On this appeal we are obliged to take the findings as they come to us affirmed by the Appellate Division, for it is on these findings that the court has determined that an injunction should issue. The facts as stated in these findings are the following:

The Niagara river is a navigable fresh water stream connecting Lake Erie with Lake Ontario, the current of which flows in a northerly direction from Lake Erie to Lake Ontario at a velocity from four to six miles per hour. (A good brisk walk for a man.)

Since June 21, 1916, the plaintiff has been and now is the owner in fee of all that portion of Squaw Island here in question. On the 21st of April, 1926, the People of the State of New York by letters patent granted to the plaintiff certain lands under the waters of Niagara river mentioned and described in the complaint in this action; that since acquiring title to Squaw Island the plaintiff, through its licensee, dredged sand and gravel in the Niagara river in the vicinity of Squaw Island, the operation of which was conducted through scows and boats equipped with powerful hydraulic suction pumps, and caused portions of the uplands of Squaw Island to slide and fall into the water by reason of the removal of support thereof. This operation was conducted to such an extent that the original shore line of said island was changed and a large bay or indentation was formed on the southwesterly end thereof. The digging itself was done by the Squaw Island Sand and Gravel Corporation, a licensee of the plaintiff, which had a license from the United States government for certain areas in the southerly end of the island. This company never exercised any of the rights under said permit, which expired December 31, 1929.

Under date of April 27, 1926, the United States, through its district engineer in the city of Buffalo, served notice upon various persons, firms and corporations that any dredging operations in progress in the Niagara river must cease on or before May 15, 1926, as they were in violation of section 10 of the River and Harbor Act, approved March 3, 1899. (30 U. S. Stat. pp. 1121, 1151.)

I quote the 14th finding in full:

" 14. That in addition to the dredging of sand and gravel in and around Squaw Island, the plaintiff through its licensee, the Squaw Island Sand and Gravel Corporation, excavated a channel between the shore line of said island and the interior thereof, and that by the dredging of sand and gravel from the lands under water, the dredging away of the shore line of Squaw Island and the excavation of a channel toward the interior of the said island by the plaintiff in and along the westerly and southerly portion of said island, the said plaintiff created a bay therein which acted as a settling basin drawing sewage and other matter from Niagara River upon the sand and gravel existing on lands under the waters of said bay."

That by chapter 341 of the Laws of 1882 the city of Buffalo was granted authority to construct the Swan street trunk sewer in the city of Buffalo and to outlet said sewer into the Niagara river north of the waterworks and south of Albany street. The sewer was built and has been maintained and used by the defendant, pursuant to such act, since about the year 1883.

The following findings I quote in full:

" 17. That for a long time prior to the plaintiff's ownership of Squaw Island, other agencies besides the defendant, the City of Buffalo, polluted and are at the present time polluting the waters of Niagara River before they reach the lands of plaintiff." ·

" 19. That as the plaintiff through its licensee dredged sand and gravel from the lands under water east of the

Harbor Line and east of the bulkhead line at Squaw Island, sewage and other material were drawn upon the lands of the plaintiff by the suction produced in such dredging.

" 20. That the Swan Street Trunk Sewer of the City of Buffalo at all times since 1883 carried and now carries not only the dry water flow or sanitary sewage so-called of the district served, but also the storm water drainage of said district."

" 22. That there was no pollution of the sand and gravel upon the lands of said plaintiff from the time the defendant commenced to sewer into Niagara River until the creation of the bay and channel by the plaintiff, or its licensee, on the southwesterly side of Squaw Island."

The findings further state that the method adopted by the plaintiff and its assignee in producing sand and gravel resulted in making a portion of its lands a part of the bed of the Niagara river.

Again I quote:

" 25. That the method adopted by the plaintiff, and its licensees, in such removal, not only subjected its lands to the effect of any pollution that there might be of the waters of Niagara River, but also interfered with the current of the stream by causing the collection of water in the artificial bay at the southern extremity of the Island, and reducing the flow of the water, generally, along the west shore of the Island.

" 26. That but for the plaintiff's own acts, no sewage from the Swan Street sewer, either as originally constructed, or as reconstructed by the City, including the building of the Bird Island Pier, would have been deposited upon the lands of the plaintiff, but rather, by reason of the swift current of the river, would have been carried past the lands of the plaintiff without damage thereto."

The trial judge dismissed the complaint, finding as a question of law that the defendant has not invaded or injured any property of the plaintiff. This conclusion of

law was reversed by the Appellate Division which, however, affirmed all the findings of fact just stated. The Appellate Division on these facts gave judgment remitting the case to the Special Term, (1) for the purpose of determining the amount of damages, if any, to which the plaintiff is entitled; (2) for the issuance of an injunction restraining the city of Buffalo from disposing of its sewage into the Niagara river in such a manner as will invade the legal rights of the plaintiff as a lower riparian owner; (3) suspending the injunction until the Special Term shall determine adequate means to avoid the pollution of which the plaintiff complains, and a reasonable time to put it into effect; (4) the date of the injunction to be fixed accordingly, and upon such further terms as the court in its discretion deems best to preserve the legal rights of the parties hereto.

The question comes down to this: Is this a case where the plaintiff is entitled to an injunction or any equitable relief? Can it compel the city to change its sewer system to prevent damage which the plaintiff has caused itself in the past and which may never exist again? Here is a large drainage sewer serving a large part of the city of Buffalo. We are told that the Niagara river has a current which flows at the velocity of from four to six miles an hour. From 1883 to 1925, a period of forty-two years, the sewer was in operation without causing any damage whatever to the plaintiff's land or its sand. Thereafter the plaintiff changed the course and current of the river, created a large bay, thus preventing its natural flow. By this means the plaintiff drew upon its land, or the land under the water, the sewage which no longer could be carried off by the flow of the river and which remained to do damage, solely by reason of the plaintiff's interference.

This is not a case where a riparian owner is complaining because the water has been polluted, as it flowed by his place in its usual and natural course; neither is it a

case where a riparian owner has been damaged because of the usual and ordinary use made of a flowing stream, such as for mill purposes, irrigation or the watering of cattle or for navigation. The plaintiff has changed the course of the river; it has stopped its natural flow, has slowed down the current, has created bays by digging out its upland, and complains against the city because these changes, created by it for commercial purposes, failed to carry off the sewage and damaged its sand or land under water. Is it for such a purpose that equity should require the city of Buffalo to change its extensive sewerage system? I think not.

The United States government must be consulted before the natural flow of navigable waters can be changed and the courses of waterways interfered with. In this case the plaintiff's licensee obtained a license from the government. Later the United States government notified property owners along the river that dredging operations therein must cease. I mention these matters simply to show that riparian rights are more or less limited to the natural and ordinary flow of navigable rivers and uses which are customarily made of them; that riparian rights do not necessarily include the right to change the course of rivers and the depth of river bottoms.

The city of Buffalo should not be obliged to devise and submit plans to the courts modifying its sewer system so as to prevent any future damage to the plaintiff's sand in its bays. The plaintiff may never be able to dredge there again without permission from the United States government. Shall the city undertake extensive sewer alterations in view of such contingencies or doubtful expectancies? The Special Term has been ordered to determine an adequate means to avoid the pollution *of which the plaintiff complains* and an injunction is to issue after the city has had a reasonable time to put the means or plan into effect.

We all agree, I think, that no such injunction should issue.

Suggestion, however, is made by Judge FINCH that the Appellate Division judgment should be modified by providing that the injunction issue should the city fail to pay the plaintiff's damage as determined by the Special Term. This might be reasonable procedure if we were convinced that the plaintiff has suffered any damage for which the city of Buffalo is responsible. The facts as detailed show, in my judgment, that the plaintiff has suffered no damage through the acts of the city for which it should pay. The authority relied upon, *Huffmire* v. *City of Brooklyn* (162 N. Y. 584), is not in point. Huffmire was authorized by an act of the Legislature to plant his oysters in well-defined, licensed oyster beds. He had placed his property, personal property, on such a bed. The city of Brooklyn collected coal tar in its sewer and dumped or threw it onto these oysters. Here was a direct act of damage which was unnecessary and unjustified, as the city of Brooklyn could have built its sewer elsewhere.

The city of Buffalo has not collected sewage and discharged it upon the land of the plaintiff. For forty years the Niagara river carried off the city's sewage without damage to anybody. For the purpose of selling its sand the plaintiff dug away the shore of the Niagara river, virtually stopped or retarded its flow, dug out a bay, drawing into it from the river the sewage of which it complains. We have the fact clearly stated in the fourteenth finding, that the plaintiff, by dredging away the shore line of Squaw Island, and by the excavation of a channel toward the interior, created a bay therein which acted as a settling basin, drawing sewage and other matter from the Niagara river upon the sand and gravel existing on lands under the waters of said bay. This is not *a riparian right* which has been destroyed or injured by the city of Buffalo. The plaintiff bases its cause of action upon injury to its riparian rights. What were its riparian rights? So far it has been assumed in this case, without question, that the plaintiff was entitled to a

flow of clear water, no matter what it did to the shore line or to the Niagara river. If the plaintiff, under the conditions which it created, has no riparian rights, it has suffered no damage.

Judge VANN, in *Strobel* v. *Kerr Salt Co.* (164 N. Y. 303, 320), has defined these rights so clearly that I quote his words in full: "A riparian owner is entitled to a reasonable use of the water flowing by his premises in a natural stream, as an incident to his ownership of the soil, and to have it transmitted to him without sensible alteration in quality or unreasonable diminution in quantity. While he does not own the running water, he has the right to a reasonable use of it as it passes by his land. As all other owners upon the same stream have the same right, the right of no one is absolute, but is qualified by the right of the others to have the stream substantially preserved in its natural size, flow and purity, and to protection against material diversion or pollution. This is the common right of all, which must not be interfered with by any. The use by each must, therefore, be consistent with the rights of the others, and the maxim of *sic utere tuo* observed by all. The rule of the ancient common law is still in force; *aqua currit et debet currere, ut currere solebat.* Consumption by watering cattle, temporary detention by dams in order to run machinery, irrigation when not out of proportion to the size of the stream, and some other familiar uses, although in fact a diversion of the water involving some loss, are not regarded as an unlawful diversion, but are allowed as a necessary incident to the use in order to effect the highest average benefit to all the riparian owners. As the enjoyment of each must be according to his opportunity and the upper owner has the first chance, the lower owners must submit to such loss as is caused by reasonable use. Surrounding circumstances, such as the size and velocity of the stream, the usage of the country, the extent of the injury, convenience in doing business and the indispensable public necessity of cities and villages for drainage, are also taken into consideration, so that a use which, under certain

circumstances, is held reasonable, under different circumstances would be held unreasonable. It is also material, sometimes, to ascertain which party first erected his works and began to appropriate the water." This was followed in *Pierson* v. *Speyer* (178 N. Y. 270) and *City of New York* v. *Blum* (208 N. Y. 237, 242), where Judge MILLER wrote regarding riparian owners: " Each is entitled to a reasonable use of the water flowing by his premises and each is entitled to have the stream *preserved in its natural size, flow and purity.*"

Riparian rights are such as grow out of the ownership of banks of streams and not of the ownership of the bed of the stream. (*Rome Railway & Light Co.* v. *Loeb*, 141 Ga. 202.)

Gould on The Law of Waters ([3d ed.] § 148) says: " Riparian rights. * * * The distinction between tide waters and fresh, or between public and private waters, is not necessarily a material consideration in determining questions relating to riparian rights, since riparian rights proper depend upon the ownership of land contiguous to the water, and are the same whether the proprietor of such lands owns the soil under the water or not."

Again, in section 92, the author states: " The owners of lands bordering upon navigable waters may lawfully throw sewage and other refuse matter into them, provided they do not create a nuisance to others; for it is a natural office of the sea and of all running waters to carry off and dissipate, by their perpetual motion and currents, the impurities and offscourings of the land."

The plaintiff's riparian rights were not enlarged by reason of its property being an island instead of the main land. It could make reasonable use of the Niagara river for purposes stated in these opinions or reasonable use for any other purpose connected with the use of its main land, but it had no right to divert the stream, permanently retard the flow of the water, or change its current and then complain of the results. As before stated, for forty-two years the current of the Niagara river carried off the drainage of the city of Buffalo without injury to the

plaintiff or anybody else. The plaintiff dug away the bank or shore of the river, created bays and canals, creating in the words of the finding, " a settling basin drawing sewage and other matter from Niagara River upon the sand and gravel." In other words, the flow of the river at this point was retarded and its natural current interfered with, not for temporary use, but permanently. These excavations and changes in the watercourse, under all the circumstances stated here, were not the reasonable use which a riparian owner can make of a navigable river.

The Appellate Division has certified six questions, and in my opinion they should be answered in the following order:

" 1. Is the judgment entered by the Appellate Division sustained by evidence presented at the trial?" Answer: No.

" 2. Is plaintiff's right to recover barred by its own acts or those of its licensee?" Answer: Yes.

" 3. Does chapter 341 of the laws of 1882 constitute a complete defense to this action? " Answer: On the findings here made, yes.

" 4. Do the actions of the United States government in respect to the modification and withdrawal of dredging permits in and about Squaw Island bar a recovery of damages? " Answer: No.

" 5. Do the actions of the United States government in respect to the modification and withdrawal of dredging permits in and about Squaw Island bar the granting of an injunction against the defendant?" Answer: No.

" 6. Did the Appellate Division err as matter of law in granting the judgment which it did?" Answer: Yes.

The judgment of the Appellate Division should be reversed, and that of the Trial Term affirmed, with costs in all courts.

O'BRIEN, HUBBS and LOUGHRAN, JJ., concur with FINCH, J.; CRANE, Ch. J., dissents in opinion; LEHMAN, J., dissents.

Ordered accordingly.