Squaw Island Freight Terminal Company, Inc., Respondent, Appellant, *v.* City of Buffalo, Appellant, Respondent.*

Fourth Department, March 22, 1939.

---

* Modfg. and affg. 165 Misc. 722.

*Desbecker, Fisk, Deckop & Conners* [*James A. Deckop* and *Adrian Block* of counsel], for the plaintiff.

*David Diamond, Corporation Counsel* [*Frank C. Westphal, Assistant Corporation Counsel*, of counsel], for the defendant.

CUNNINGHAM, J. This action is brought by the plaintiff for an injunction to restrain the defendant from trespassing upon the property of plaintiff on Squaw island in the Niagara river and upon its lands under water adjacent thereto, and for damages.

The Niagara river is navigable and is a part of the boundary line between the United States and Canada.

The plaintiff is the owner of most of the lands of Squaw island. However, a strip 240 feet in width, across the island from east to west, is owned by the International Bridge Company. Upon this strip is constructed an international railroad. This railroad runs from the westerly shore of Squaw island to the Dominion of Canada on a bridge across the Niagara river.

The plaintiff, through a licensee, for a number of years prior to 1927 obtained sand from the bed of the river near Squaw island by means of a suction dredge. The sand was pumped up from the bed of the river and dumped upon a scow which allowed the water to drain therefrom. The operation of the suction dredge loosened the sand of the shore of the island and caused it to fall into the water. This under-water suction dredge was the only means ever used by plaintiff to obtain sand from the lands under water or from the uplands. As a result thereof, the shore line of the island receded and a bay of considerable extent and depth was formed.

Upon the original trial of this action the complaint was dismissed, the trial court holding that the formation of the bay caused the sewage to gather therein and thus pollute the plaintiff's lands. The judgment entered upon such decision was reversed by this court and an interlocutory judgment was granted, directing that the case be remitted to the Special Term for the purpose of determining the amount of damages, *if any*, to which the plaintiff is entitled, and directing that an injunction should issue restraining the city from draining its sewage into the Niagara river in such manner as to invade the legal rights of the plaintiff. This interlocutory judgment was modified by the Court of Appeals and affirmed as modified, the modification being to the effect that if the city were unable to find means adequate to avoid the pollution, then the Special Term should find the amount of permanent damages, if

any, suffered by the plaintiff, and that an injunction should not issue if the amount of permanent damages so found were paid to the plaintiff. (*Squaw Island F. T. Co.* v. *City of Buffalo*, 246 App. Div. 472; 273 N. Y. 119.)

Upon both the original trial and the one following the appeal the plaintiff claimed damages for sand under water lying between the westerly shore of the island and the bulkhead line, which line in this case was the former shore line of the island protected by a bulkhead. The bulkhead deteriorated and has entirely disappeared. Upon the original trial it was found that between those two lines there were 1,238,000 cubic yards of sand and gravel and that such sand and gravel were destroyed by the deposit thereon by defendant of sewage and that the value of such sand and gravel at the time of its destruction was twenty cents per cubic yard. Upon the trial following the appeal the court was of the opinion that as such findings had not been reversed upon the appeal it was bound thereby, and that such findings were sufficient to base thereon a computation of the amount of plaintiff's damages caused by the destruction of such sand under water. By the "mathematical computation of multiplying the cubic yardage of the deposits actually destroyed of the deposits of sand and gravel under water by the value per cubic yard as found by the trial court" upon the original trial, the court on the trial following the appeal fixed the amount of plaintiff's damage to the lands under water at the sum of $247,600, with interest thereon from June 1, 1927. However, the court which made such findings upon the original trial was of the opinion that the amount of plaintiff's damages could not be ascertained by such computation, and, in fact, refused plaintiff's request to find that "the plaintiff, by reason of the destruction of its sand and gravel deposits under water at Squaw Island, east of the bulkhead line, was damaged by the defendant in the sum of $247,600.00." This court evidently did not believe that the plaintiff's damages had been fixed by the findings upon the original trial, as it remitted the case to the Special Term "for the purpose of determining the amount of damages, *if any*, to which the plaintiff is entitled." The Court of Appeals seems to have had the same opinion, for it directed the Special Term to "find the amount of permanent damages, *if any*." That court further in its opinion said that the plaintiff's lack of a license from the Federal government to dredge sand from the river bed might be considered in mitigation of damages "and even perhaps to the entire elimination thereof."

The Court of Appeals thus holds in effect that the plaintiff has not suffered any loss by the destruction of its sand and gravel

under water unless it has or can obtain the right to take the same from the bed of the river. The burden, of course, is upon the plaintiff to show the amount of damages which it has sustained by reason of the acts of the defendant. The measure of damages is the difference between the value of the lands of plaintiff under water before the pollution of the sand and the value of those lands after such pollution.

The plaintiff has not shown that it can obtain a permit from the United States government to dredge sand from the bed of the Niagara river in the vicinity of Squaw island. The finding to the contrary is based upon surmise.

In fixing the value of plaintiff's lands under water before and after the pollution of the sand, the lack of a permit from the United States government would have to be taken into consideration. Under the rule of damages adopted by the trial court the amount thereof was fixed without giving any consideration to the fact that the plaintiff has not a permit to dredge sand from the bottom of the river in the vicinity of Squaw island. Likewise, in fixing the amount of damages awarded to the plaintiff for the destruction of the sand under water, the possibility that the railroad embankment and the abutments of the railroad bridge might be endangered by the dredging of sand from plaintiff's lands under water in the vicinity of the railroad right of way was not considered. The damages awarded to plaintiff in this case, based upon the alleged destruction of sand under water, are highly speculative.

The court upon sufficient evidence held that because of the construction of a sewage disposal plant by defendant pollution of plaintiff's uplands would cease on June 30, 1938, and granted damages to plaintiff in the sum of $64,640, being the depreciation in rental value of Squaw island up to such date with interest upon each annual aggregate of damage.

Therefore, the judgment appealed from should be modified by reducing the amount awarded to plaintiff to the sum of $64,640, with interest upon each annual aggregate of damage, commencing June 1, 1928, and, as thus modified, should be affirmed, without costs.

All concur. Present — SEARS, P. J., CROSBY, CUNNINGHAM, TAYLOR and DOWLING, JJ.

Judgment modified on the law and facts in accordance with the opinion, and, as modified, affirmed, without costs of this appeal to either party. Certain findings of fact disapproved and reversed and new findings made.