FREDERICK F. LOVEJOY
*vs.*
TOWN OF DARIEN

Superior Court        Fairfield County        File No. 60092

MEMORANDUM FILED JULY 16, 1943.

*John R. Cuneo,* of South Norwalk, and *Durey, Pierson & Comley,* of Stamford, for the Plaintiff.

*Cummings & Lockwood,* of Stamford, for the Defendant.

MURPHY, J. In 1935, the plaintiff acquired the perpetual franchise to eight acres of oyster ground situated to the west of Pratt's Island in the waters of Long Island Sound within the limits of the Town of Darien. These particular grounds were originally set out by the Oyster Committee of said town on May 1, 1867, and came to the plaintiff by mesne conveyances. They were particularly well adapted to the fattening of oysters, one of the stages in the life of that luscious bivalve whose growth and deliciousness depend upon proper care and attention in suitable waters from the setting of the baby oyster to the harvest of the mature mollusk in certified waters on its journey to treat the epicurean palate.

Fattening grounds must have good hard bottoms, free of mud at the top but soft underneath, be well shielded to prevent damage from storms and having a straight tide running across them with no eddies. These grounds had all these requirements.

In 1936, the plaintiff planted 6,200 bushels of two year old oysters on these grounds and these oysters would normally be ready for transfer to a certified ground for market in four years.

Under legislative authority the Town of Darien in 1939 constructed a municipal sewage system for the town, the outfall pipe of which was laid diagonally across the plaintiff's beds. A dredge was employed in excavating a trench five to six feet wide across the grounds into which a 24 inch pipe was laid. The depth of the trench varied from three and one-half to five feet with two feet of coverage over the

pipe. In digging the trench, the dredge deposited the excavated material on the adjoining ground and after the pipe was laid, the trench was back filled.

The contract for the outfall sewer was awarded December 6, 1938, and work was started in January, 1939. The shore end of the pipe was laid starting April 13th, the excavation under water started April 28th and the back filling was completed May 31st.

The defendant at no time gave formal notice to the plaintiff of its plan to lay the discharge pipe across these grounds and made no award of damages to him.

Plaintiff first acquired knowledge of the plan to run the sewer through his beds in January, 1939, and then endeavored to have the Sewerage Commission alter its plan and lay the drain in another position to do less damage. When his efforts failed he succeeded in removing 4,000 bushels of oysters to other fattening grounds but the remainder were on the grounds when the sewer work was started.

After the pipe was installed the plaintiff examined the beds and found the oysters ruined as they were covered with "pap", a term he used to describe the soft muddy substance and silt that had been excavated from the trench and deposited over the grounds. Subsequent and regular inspection and dredging has shown the bottom to be uneven where the dredge worked and covered with mud away from the trench. It has lost its usefulness and is worthless as an oyster ground.

The plaintiff sued for damages and asked for an injunction and other equitable relief.

The defendant maintains that it exercised a governmental function in the installation of the sewer and that any injury suffered by the plaintiff is *damnum absque injuria,* because the submerged lands and the franchise to cultivate them are servient to the paramount public right to use the waters and submerged lands for public purposes.

Defendant relies on the opinion in *Lovejoy vs. Norwalk,* 112 Conn. 199, but fails to draw the distinction between the facts in that case and the present one. There the damage complained of was consequential arising from the pollution of waters that flowed over the plaintiff's oyster beds. Here the damage is direct to the beds themselves and the oysters thereon.

Under section 3303 of the General Statutes, Revision of 1930, the plaintiff acquired sole ownership of the oysters planted on these grounds and the exclusive right to use the grounds for the planting and cultivation of shell fish. Section 3304 provides for the taxation of the grounds the same as real estate and this tax is in lieu of rental.

This case corresponds with *Huffmire vs. City of Brooklyn,* 162 N.Y. 584, except that in this case the damage is more direct because the town actually invaded the beds in digging the trench, laying the pipe and actually depositing the mud and other materials from the excavation on the plaintiff's oysters.

The New York statute upon which the *Huffmire* decision is based is very much like section 3303. The plaintiff therein had a permit which gave him "the exclusive property in the oysters so planted and the exclusive use of said oyster beds." The rental or license fee was $10 per year.

In that opinion the court said (p. 588) : "This case falls directly within the constitutional inhibition against the taking of property without compensation. The plaintiffs were lawfully in possession of a piece of land under water upon which they had planted a bed of oysters. They held their title under legislative authority, which was as ample and unquestioned as that under which defendant's sewer was constructed. Although this land was under public waters it was as much the private property of the plaintiff as though it had been a tract of farm land held under a lease from the town of Flatlands under legislative authority. The act of the defendant in pouring its sewage upon this land was not inconsequential. It was as direct as though it had been discharged upon a piece of land owned or rented by the plaintiffs and used for farming or gardening purposes. . . . The injury is so direct as to amount to an invasion of a private right, which no legislative sanction or direction can justify or excuse."

The plaintiff is entitled to a judgment in damages.

The reasonable value of the plaintiff's grounds before dredging started was $3,000. The cost of moving the 4,000 bushels of oysters that were salvaged was $800. The remaining 2,200 bushels which were destroyed were worth $2,200. Though there was evidence that the original planting of 6,200 bushels would have increased by growth to 9,000 bushels the

plaintiff is apparently making no claim for the overage.

Judgment may enter for the plaintiff to recover of the defendant damages of $6,000 with interest from May 1, 1939, amounting to $     , a total of $     and costs of suit.